Thomas M. Burton, (00518)
9980 S. 200 West. Suite 200
Sandy, Utah 84070
 (801) 918-1656
thomasburtonlaw@aol.com

---

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

RECEIVED US Dist Court -UT
SEP 26 '23 PM 03:17

## CENTRAL DIVISION

|  |  |
|---|---|
| Thomas M. Burton, *in pro per*, | Case: 2:23-cv-00671<br>Assigned To : Pead, Dustin B.<br>Assign. Date : 9/26/2023<br>Description: Burton v. Utah Supreme Court et al |
| Plaintiff, | **Case No.** |
| vs. | **CIVIL RIGHTS COMPLAINT** |
| The Utah Supreme Court, The Utah Second District Court; The Utah State Bar, and Does 1-10, | **AGAINST (1) THE UTAH SUPREME COURT' FOR ITS *EX POST FACTO PUBLISHED* DENIAL OF BURTON'S APPEAL UPON HEARSAY NEVER ARGUED, AND ITS REFERRING BURTON FOR UNSPECIFIED DISCIPLINE AFTER THE FACT AND WITHOUT GROUNDS (2) THE UTAH SECOND DISTRICT COURT'S DISMISSING BURTON'S APPEAL AS UNTIMELY AGAINST ALL THE EVIDENCE THAT IT WAS TIMELY, AND (3) THE UTAH STATE BAR'S DISBARRING BURTON ON GROUNDS BURTON HAD ALREADY WON IN A LOWER COURT, ALL IN VIOLATION OF BOTH THE LAW AND THE EVIDENCE,** |
| Defendants. |  |

## INTRODUCTION

## JURISDICTION AND VENUE

This is an action for injunctive relief and damages pursuant to 42 U.S.C. §1983 based upon the continuing violations of Plaintiffs' rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. §1983 and questions of federal constitutional law.  Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.  Supplemental jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C. §1367.

Venue is proper in this District in that the events and conduct complained of herein all occurred in this District.

## FIRST CAUSE OF ACTION

Attorney Thomas Burton's right to argue a case in the Utah Supreme Court with no hint of the severe mischaracterization of his argument and denigration of his character later to appear in the published opinion.  First Amendment, 43 S.Ct. 625, 29 A.L.R. 1446]), 42 USC.ann.

/s/                                      2

## SECOND CAUSE OF ACTION

Attorney Thomas Burton's right to speak freely as an advocate, First Amendment 42 U.SC. $1983.

## THIRD CAUSE OF ACTION

Attorney Thomas Burton's Right to argue for the rights of others, First Amendment 42. U.SC. $1983, and The Right of attorneys to argue for his or her rights, First Amendment 42 U.SC. $1983.

## FOURTH CAUSE OF ACTION

Cruel, groundless, and unusual punishment depriving Attorney Thomas Burton of his livelihood centuries ago condemned by Magna Carta and now by the 8th Amendment to the federal constitution, *Timbs v. Indiana*, 586 U.S.____ (2019), 42 U.SC. $1983.

## FIFTH CAUSE OF ACTION

This is an action for injunctive relief and damages pursuant to 42 U.S.C.§1983 based upon the continuing violations of Plaintiff's civil rights and thus incidentally those of his clients under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C.§1983 and questions of federal constitutional

/s/                                          3

law.  Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.  Supplemental jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C. §1367.  Venue is proper in this District in that the events and conduct complained of herein all occurred in this District.

## SIXTH CAUSE OF ACTION

THOMAS M. BURTON seeks an Order forcing Utah to obey the Eighth Amendment's protection from excessive fines (or force) that the Fourteenth Amendment protects as "a constant shield throughout Anglo-American history "*Timbs v. Indiana*, 139 S. Ct. 682 (2019.)  to keep Burton representing Shannon Glen Winward in State v. Winward, case nos. 150904713, (2012), 355 P. 3d 1022 (2015).

## PRELIMINARY STATEMENT

1. One of the greatest of Utah's evils and the worst of its crimes is forcing alleged criminal law offenders into the complete control of the Executive Board of Pardons that constitutes a Bill of Attainder prohibited by the federal Constitution as well as violating the Separation of Powers and Due Process clauses of both Constitutions, State and Federal.

/s/                              4

2. Comes now Thomas M. Burton for and on behalf of himself, and as a Private Attorney General representing his clients Glen Winward, Leo Rising, and Ricky Cunningham, in the public interest and their own as well to seek enforcement of the Constitution of the United States in in *State v. Winward*, case 150904713, (2012), and 355 P. 3d 1022 (2015) and in the cases of Rising and Cunningham as well. [1]

3. Burton's argument before the Utah Supreme Court for which the Winward family retained him was based in part upon the concept

---

[1] Mr. Burton has been a member of the Legal Department of the Shell Oil Company in New York and Los Angeles, a partner at Van Cott, Bagley, Cornwall & McCarthy, a large Salt Lake City firm, and senior litigation partner at Hancock, Rothert, & Bunshoft, a mid-sized San Francisco law firm, now merged with Duane Morris, a global Philadelphia firm. He has specialized in complex civil and criminal litigation. Representative clients include the Ariel Ballentine Syndicate at Lloyds, London; numerous domestic life and liability insurance companies, Alcatel-Lucent, Amaron Construction Corp., the Bechtel Group of Companies; Borden, Inc., etc. Mr. Burton has also represented numerous individual clients in both civil and felony jury cases and appeals against insurance companies, corporations, and the government. Non-profit foundations have retained him in a wide variety of public interest cases. Mr. Burton has won court victories in Alameda, Colusa, Contra Costa, Fresno, Humboldt, Los Angeles, Marin, Monterey, Napa, Orange, Placer, Riverside, Sacramento, San Francisco, San Bernardino, Riverside, San Bernardino, San Mateo, Santa Barbara, Santa Clara, Santa Cruz, and Sonoma Counties in the state of California, and the Counties of Utah and Salt Lake in the State of Utah. He has won federal court victories in the federal courts in the Southern District of New York, the Central District of California, the Northern District of California, the District of Utah, and the 9th Circuit Court of Appeals.

vigorously announced by contemporaneous holdings in *Lafler* v. Cooper, 566 U.S. 156 (2012), and *Missouri* v. *Frye*, 132 S. Ct. 1399 (2012) that the plea bargain stage is the most important part of the criminal justice proceeding because 97% of cases are settled at that juncture and providing a second chance for those whose plea bargains were mishandled by attorneys.

4. Irrespective of their status, the generic concepts of their copious research, Burton argued, was broad enough to set free Shannon Glen Winward because his 11-year matrix, comparable in effect to a plea bargain, had already been exceeded by 24 **years** when Burton was retained to represent him.

5. The Utah Supreme Court, however, marginalized Burton's argument to whether Winward qualified for application of a Utah post-conviction relief proceeding that prior counsel had initiated.[2]

---

[2] ¶33. Since we remanded, however, Mr. Winward has found a new attorney—Thomas Burton—and the change has not been an improvement. Instead of following our instructions and arguing that Lafler and Frye were "dictated by precedent existing at the time the petitioner's conviction or sentence became final," Mr. Burton has tried to persuade us that Lafler and Frye are "total watershed cases" and "more important than Gideon [v. Wainwright]." According to Mr. Burton, these cases establish a broad principle that "the plea bargain stage is the most important part of the criminal procedure." To this first broad principal Mr. Burton adds a second—which he locates in Faretta v. California, 422 U.S. 806 (1975)—under which a criminal defendant has a "[Sixth] Amendment constitutional right to control his own defense." ¶34From these two principles Mr. Burton derives an alarming set of conclusions. The smallest of these is that Mr. Winward had an "absolute right to know everything in detail about any pleas sought or received." Because this right was violated, Mr. Burton argues, Winward is now

6. That diversion ignored the indisputable fact that Winward

had already been in prison without explanation or justification 24

years <u>beyond</u> his matrix.  Even though Burton proved by Winward's

affidavit that he did not get an entitled and intended plea bargain

after his first jury hung, the Utah Supreme Court did not believe that

---

"entitled to immediate release" without regard to the procedural Opinion of the Court
limitations of the PCRA.  Indeed, Mr. Burton seems to suggest that Mr. Winward must be
released even if his counsel's performance was perfectly adequate, ¶35.  But this is only
the beginning. Because serious crimes in Utah usually carry indeterminate sentences, a
person pleading guilty to one of these crimes does not know, at the time of his plea
bargain, precisely what period of incarceration he is accepting by pleading guilty. This
violates Mr. Burton's principle that defendants must know "everything in detail" about
the plea bargains that are offered to them. Mr. Burton therefore argues that all defendants
who have pled guilty to crimes bearing indeterminate sentences must be allowed to
enforce the sentencing guidelines against the parole board as a binding part of their plea
agreement—or, in the alternative, that all of them must be released at once. In fact, Mr.
Burton tells us, all indeterminate sentences are constitutionally infirm because they
violate procedural and substantive due process and our constitutional requirement of
separation of powers. ¶36. "How are we to respond to such arguments? They're not the
worst we've seen they follow a discernable logic, and they express legitimate concerns
about the fairness of a criminal justice system that, though designed for trials and
sentences, is now dominated by pleas and paroles. But they misconstrue precedent in a
manner far exceeding good-faith disagreement, one that demonstrates either gross
incompetence or a reckless disregard for the law.
¶37 Perhaps more to the point, these arguments help us not a whit in deciding this case.
They go far beyond the scope of the ruling from which Mr. Winward appeals; indeed,
they go beyond the scope of the statute that provides the basis for Mr. Winward's entire
petition. They are thus legally irrelevant, and Mr. Burton's devotion to them has
distracted him from litigating the issues on which his client's fate depends.  In particular,
after the State's brief raised the serious issue of the adequacy of Mr. Winward's petition,
Mr. Burton could spare only a page of his reply brief for his response—a page lacking
even a single citation to the petition whose adequacy had been challenged. The remainder
of his reply was dedicated to persuading us that we really can release the majority of
Utah's prison population immediately, and to reviving a Strickland claim whose
dismissal we had already affirmed in our earlier Winward decision."

the two new U.S. Supreme Court cases' dictum was enough to free Winward from his grossly illegal overkill:

> Unfortunately for Mr. Winward, we are persuaded that *Lafler* and *Frye* are not retroactive under the federal "dictated by *1026 precedent" standard, and that they therefore do not create a new cause of action under section 78B-9-104(1)(f).  In doing so, we look in part to the level of judicial disagreement surrounding *Lafler* and *Frye* but we also perform an independent assessment of the law as it existed prior to those decisions and ask whether that law dictated the out-come of *Lafler* and *Frye*.

7. As soon as Winward's family hired Burton, he immediately saw that a matrix bears some analogy to a plea bargain.  Accordingly, a matrix is an important part of a Utah criminal procedure.

8. Compliance with its terms should terminate the litigation, regardless of *Lafler* and *Frye*'s alleged lack of technical application, but clearly based upon due process alone that should permeate all criminal litigation.

9. Winward, at the time Burton appeared before the Utah Supreme Court, had an 11-year matrix **that had long ago expired**. Winward thus had every right to immediate release without resort to

the Utah Post-Conviction Remedy Act or *Lafler* and *Frye* regarding which the Court tried to skew Burton's argument for defeat.

10. Why did not the Supreme Court release Winward on the spot since **he had been detained 24 years beyond his matrix**? Obviously, because Winward's sentence was controlled not by the Court, but by the Utah Board of Pardons and Paroles. So much so, that 9 days after Burton argued his case before the Utah Supreme Court, the Board increased without warning or grounds, Winward's sentence to life in prison where he remains today.

11. The Court with much dialogue heard Burton's argument cordially. Only did the written opinion <u>five months later</u> refer Burton for unspecified discipline based upon hearsay, much of it erroneous and none of which the Court allowed Burton at oral argument to hear, refute, or explain. Doing so was complicit bad faith on the part of the Court and its baseless referral emboldened the dutiful Utah State Bar to which the Court referred Burton for groundless discipline *ex post facto*.

12. The United States Constitution provides:

## Article VI

This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made,

or which shall be made, under the authority of the United States, _shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding._ (emphasis added)

13. Utah's legislature, however, ignored that constitutional mandate by creating a Board of Pardons and Appeal that is on its face null and void.

14. The Utah Supreme Court in its groundless written opinion ordered Burton referred to the Utah State Bar for _unspecified discipline_. That referral was published five months after a cordial hearing at which no displeasure or ruling was made. The Court made the referral after the hearing without notice or opportunity for review or response. The whole opinion is void _ex post facto_. The tardy opinion by the Chief Justice resounds with hearsay, invective, speculation, and error, insulated from any objection or response.

15. Winward's current languishing in prison for life is justice deprived irrespective of the Utah Supreme Court's interpretation of _Lafler_ and _Frye's_ not being new law. Justice is guaranteed by both the United States and Utah constitutions that override any state law or court ruling to the contrary.

/s/                              10

16. Worse still, the Utah Board of Pardons and Parole, in retaliation for Burton's challenging the Utah Supreme Court to release Winward for being held many years beyond his 1993 11-year matrix, nine days later increased Winward's sentence to life in prison without notice or hearing.

17. It was to expose Utah's violation of the constitutional separation of powers mandate, long mysteriously tolerated by the Utah Supreme Court, that Burton justifiably supported in his reply brief the compulsion for redress, to end the Board of Pardons and Paroles' detention of all prisoners beyond their plea bargains, matrices, or guidelines.

18. Burton argued that plea bargains, guidelines, and matrices, when violated by the Board of Pardons, ought to be enforced by Utah State Courts just as they are by the Federal Courts in any state. Under Utah's renegade system, the judiciary's hands appear to be tied from enforcing plea-bargains because sentencing is the exclusive prerogative of an Executive Branch Board of Pardons and Parole.

**THE THIRD DISTRICT COURT OBSTRUCTED JUSTICE BY ATTEMPTING TO REMOVE BURTON AS WINWARD'S COUNSEL SO AS TO KEEP WINWARD IN PRISON WOODWORKING FOR THE PRISON'S PROFIT**

19. In order to preserve Utah's unconstitutional sentencing

system allowing the Board of Pardons to interfere with Judicial findings or pleas of guilt, the Utah State Supreme Court in its *ex post facto* written opinion without notice or hearing, referred Burton to the Utah State Bar for unspecified discipline.

20. So doing was both a violation of the Utah and United States Constitutions beyond the Court's jurisdiction and was politically intended to protect the prison hegemony and the Utah Board of Pardons and Parole at which Burton had taken aim.

21. Thomas Burton argued for Glen Winward's release before the Utah Supreme Court with no hint of censure.   The 5 months later opinion at 215 UT 61, without warning or an opportunity to reply, referred Burton to the Utah State Bar "for appropriate disciplinary proceedings", prohibited by the U.S. Constitution as *ex post facto*.

22. Burton is not subject to the Bar.  He is supposed to be a member by virtue of scoring very high on the written examination as he did when it was three days of written responses to hard questions.

23. Unable, therefore, to find any justifiable ground for disciplining Burton for his Winward performance, the State Bar had to look elsewhere for something disciplinary.  It seized upon Delores Horn's consumer complaint against Burton.  The Bar, however,

overlooked that Horn had already prosecuted her case against Burton

at the Salt Lake City Justice Court-Small Claims Division, where the

Honorable Bryant Farnsworth, Judge *Pro Tempore,* wrote the

following opinion in Burton's favor:

F I L E D

SALT LAKE CITY JUSTICE COURT
January 27, 2015

This matter came before the Court on January 15,
2015. Both parties were present and had the opportunity
to testify and submit evidence. Plaintiff sues for (1)
"breach of an implied contract," (2) "misrepresentation of
non-profit solicitation," and (3) "punitive damages for
professional misconduct and dereliction of duty."
In small claims matters, the burden of proof upon a
claimant is that of a preponderance of the evidence. In
order to prevail upon a claim, the claimant must persuade
the Court that a fact is true, proven by the greater weight
of the evidence, or to such a degree that the greater
probability of truth lies therein. Should the Court
determine that the evidence regarding a fact is evenly
balanced, the Court must find that the party attempting to
prove that fact has not met its burden of proof. The
claimant must also show beyond a preponderance of the
evidence that she is entitled to a remedy under the law.
First and Third Causes of Action
The first and third causes of action stem from an
underlying case (hereinafter "the Jensen case") in which
Defendant attorney legally represented Plaintiff. The
Jensen case was dismissed for the third time on
September 15, 2014. Plaintiff complains of a

- 2 -

lack of communication from Defendant about the Jensen
case, a lack of progress in prosecuting the Jensen case,

/s/

13

and its ultimate dismissal due to Defendant's failure to appear at an Order to Show Cause hearing. Plaintiff's first and third causes of action are based upon the same facts. Therefore, they will be addressed together.

Plaintiff first makes a claim of a breach of an implied contract. Based upon her complaints, Plaintiff is apparently making a malpractice claim based upon contract law. "A legal malpractice claim based on contract deals directly with the attorney's breach of a specified term in a contract between the attorney and client, within the scope of the attorney-client relationship, that causes the client to suffer damages." Christensen & Jensen, P.C. v. Barrett & Daines, 2008 UT 64, ¶ 24.

Here, Plaintiff has not made reference to a specific contractual term Defendant is alleged to have breached, but complains that Defendant has generally breached his implied duty to her in the manner in which Defendant has handled the Jensen case. However, in order to succeed on a legal malpractice claim based on contract, Plaintiff must show that there was a breach of an express promise by the Defendant, which resulted in damages. See Bennett v. Jones, Waldo, Holbrook & McDonough, 2003 UT 9, ¶ 32. Because she has not shown these elements, Plaintiff has not met her burden of proof. Therefore, on the first cause of action the Court must find for Defendant.

Plaintiff's third cause of action alleges professional misconduct. This appears to be a claim of malpractice based on negligence. In order to succeed on a claim of malpractice based on negligence, Plaintiff must show "(i) an attorney-client relationship; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages." Harline v. Barker, 912 P.2d 433, 439 (Utah 1996) (citing Williams v. Barber, 765 P.2d 887, 889 (Utah 1988).

Despite the fact that neither party produced a written attorney-client agreement, it is clear that there was an attorney-client relationship. The Parties agree that Defendant represented Plaintiff.

Every lawyer has a duty to their client based upon the attorney-client relationship and the Rules of Professional Conduct. Violations of the rules of conduct can constitute

-3-

○ evidence of malpractice. See Williams v. Mordkofsky, 283 U.S. App. D.C 52, 901 F.2d 158, 163 (D.C. Cir. 1990) (citing Waldman v. Levine, 544 A.2d 683, 690-91 (D.C. 1988)). Rule 1.3 of the Rules of Professional Conduct states that "a lawyer shall act with reasonable diligence and promptness in representing a client." Rule 1.4 states that "a lawyer shall: . . . (a)(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished; (a)(3) keep the client reasonably informed about the status of the matter; (a)(4) promptly comply with reasonable requests for information; . . ." The Utah Supreme Court has stated that once an attorney-client relationship has been established, the attorney's duty is to "use such skill, prudence and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of tasks which they undertake." Williams v. Barber, 765 P.2d at 889.

The long delays in communication with Plaintiff about the Jensen case, as well as the delays in prosecuting the case, resulting in multiple dismissals, may indicate a breach of duty. Plaintiff must nevertheless show that a breach of duty was the proximate cause of her injuries and that she sustained actual damages. ". . . *The client is required to show that absent the conduct complained of . . . the client would have benefited[]" in the underlying matter. Christensen & Jensen, P.C., 2008 UT 64, ¶ 26. Stated another way, "in a legal malpractice action, proximate cause embraces an assessment of the merits of the underlying cause of action." Williams at 889.

In reviewing the merits of the Jensen case, given the limited information provided to the Court, it is unclear whether the Plaintiff would have ultimately benefited absent the conduct complained of. Based upon the testimony given and the documents in evidence, Plaintiff

/s/                                          15

has not shown that she would have, with reasonable likelihood, prevailed at a trial, received a favorable settlement or benefited in some other tangible manner in the Jensen case. Because Plaintiff has not shown proximate cause, she is also unable to show actual damages. The Court finds that Plaintiff has not met her burden of proof beyond a preponderance of the evidence and therefore must find for Defendant on the third cause of action.

### Second Cause of Action

Plaintiff alleges that Defendant made misrepresentations to Plaintiff in order to induce her to contribute to Defendant's foundation in the amount of $1,000.00. In 4 evaluating the evidence, it appears that Defendant had previously agreed to return the $1,000.00. On this basis the Court finds for Plaintiff on the second cause of action and awards damages in the amount of $1,000.00.

### JUDGMENT

The Court finds in favor of Defendant on Plaintiff's first and third causes of action and for Plaintiff on the second cause of action. The Court awards Plaintiff:

$1,000.00 Principle
$211.18 Court Costs and Service Fees
$1,211.18 TOTAL JUDGMENT

Plus post judgment interest at the rate of 2.27% per year.
SO ORDERED this 27th day of January 2015.

24. The Decision was in favor of Burton except for $2000

that he had already agreed to return to Deloris Horn. *Res judicata*

ended further litigation by Horn against Burton, but the Bar's

Barbara Townsend, ignoring the Justice Court's decision, illegally

and unjustifiably continued using Horn to prosecute Burton in

violation of *res judicata*. [3]

---

[3] a. In *Burnett v. Utah Power & Light Co.*, 797 P.2d 1096 (1990), the Utah Supreme Court held: "Burnett's complaint in this action stated essentially the same causes of action that were raised in the federal court, but in the present case he labeled them as "RICE" violations under Utah Code Ann. §§ 76-10-1601 to -1609 (Supp. 1988). We note that even when considering the facts and inferences drawn therefrom in a light most favorable to Burnett, his claims stem from the terms and conditions of his employment and his subsequent termination by UP & L and are governed by federal labor laws and the collective bargaining agreement. These issues were fully litigated by the same parties, and a decision on the merits of the issue was rendered in the federal court. Under the doctrine of *res judicata*, it was proper for the trial court to dismiss the case rather than relitigate the issues. [7] Application of the doctrine of *res judicata* is not dependent upon the label placed upon a cause of action. As was observed in Davis v. United States Steel Supply: [8] "Rather than resting on the specific legal theory invoked, *res judicata* generally, is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims."

b. In *Rush v. City of Maple Heights* 147 N.E.2d 599 (1957), the decision from trial in a municipal court precluded trial in a higher court.  Cert. denied, 358 U.S. 814 (1958).

c. In *Roybal v. University Ford*, 207 Cal. App.3d 1086 (1989), dismissal with prejudice by the plaintiff of its action was a bar to a subsequent action on the same cause.  Dismissal of an action with prejudice, as in the Justice Court, operates as a *retraxit* and bars a new action (California Code of Civil Procedure 581(e)).  Of course there must be privity defined as a mutual or <u>successive</u> relationship to the same right.

d. In *Perez v. City of San Bruno* (1980) 27 Cal.3d 875, 885, the California Supreme Court reiterated that if it can be determined from the small claims action that the same issue raised in a subsequent proceeding was resolved in the small claims action, then res judicata was properly applied to bar the cause of action in a subsequent proceeding. (*Id.* at pp. 883-884.) We are bound by these decisions. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

e. In *Crenshaw v. Integrity Realty, llc, d.b.a., Shaker North, Lltd*. Civil Appeal from the Cuyahoga County Court of Common Pleas Case No. CV-749067, res judicata barred a subsequent action against Integrity because Crenshaw's claims for breach of contract were previously litigated in the Cleveland Municipal Court. Crenshaw's frivolous lawsuit claim was similarly barred because <u>it could have been litigated in the prior action</u>. Therefore, Crenshaw's breach of contract and fraud claims is barred by res judicata by virtue of the prior eviction action against her.

f. In *Eichman v. Fotomat Corp.*, 147 Cal.App.3d 1170, 1174-75, 197 Cal.Rptr. 612, 614 (1983), the Court held: "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery". Under California law, a default judgment is final and res judicata as to all issues raised in the complaint. See *Ely v. Gray*, 224 Cal.App.3d 1257, 1262 n. 3.

g. In *Stern v. Marshall*, <u>564</u> <u>U.S.</u> 462 (2011): "Anna Nicole Smith married wealthy 89-year-old oil magnate <u>J. Howard Marshall II</u>, and he died 14 months later. When it appeared she had been excluded from his estate, she sued in Texas state probate court, sparking a long and acrimonious series of litigations between herself and Marshall's son <u>E. Pierce Marshall</u>. At one point, a federal district court determined that Smith was owed $88 million from the estate, while the state

probate court determined that she was not owed any such substantial sum. The U.S. Supreme Court determined that the federal district court had jurisdiction to rule on the award in *Marshall v. Marshall* (2006). The case was sent back to the 9th Circuit Court of Appeals to decide other remaining issues. On March 19, 2010, the same three-judge panel found in favor of E. Pierce Marshall holding that the bankruptcy court did not have the authority to decide the case, and, because the California federal district court should not have reviewed matters previously decided in the Texas probate court, the $88 million judgment for Smith was void. Following the 9th Circuit's decision, lawyers for the estate of Anna Nicole Smith requested the appeal be heard before the entire circuit. However, on May 5, 2010, that request was denied. On September 28, 2010, the U.S. Supreme Court again agreed to hear the case. Given Pierce's course of conduct before the Bankruptcy Court, the Supreme Court concluded that he consented to that court's resolution of his defamation claim (and forfeited any argument to the contrary). We have recognized "the value of waiver and forfeiture rules" in "complex" cases, *Exxon Shipping Co.* v. *Baker*, 554 U. S. 471, 487–488, n. 6 (2008), and this case is no exception. In such cases, as here, the consequences of "a litigant ... 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor," *Puckett* v. *United States*, 556 U. S. ____, ____ (2009) (slip op., at 5) (some internal quotation marks omitted)—can be particularly severe. *If Pierce believed that the Bankruptcy Court lacked the authority to decide his claim for defamation, then he should have said so—and said so promptly. See United States v. Olano, 507 U. S. 725, 731 (1993) (" 'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited ... by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it' " (quoting Yakus v. United States, 321 U. S. 414, 444 (1944))). Instead, Pierce repeatedly stated to the Bankruptcy Court that he was happy to litigate there. We will not consider his claim to the contrary, now that he is sad".* Section C (emphasis added) 3

25. Like the Utah Supreme Court's ignoring Burton's absolute immunity for advocacy in its presence, its designated enforcer, the State Bar Office of Professional Conduct, ignored an absolute *res judicata* and collateral estoppel bar against retrying Burton as it did in a higher court on charges lost in a lower court, followed by falsely suspending his license.

26. Deloris Horn chose the Justice Court to try her case against Burton.  Neither she nor her State Bar handler, Barbara Townsend, could lawfully pursue Burton in a higher court just because the Bar and Horn were sad about losing in the Justice Court.

27. In establishing the system of divided power in the Constitution, the Framers considered it essential that "the judiciary remain truly distinct from both the legislature and the executive." The Federalist No. 78, p. 466 (C. Rossiter ed. 1961) (A. Hamilton).  As Hamilton put it, quoting Montesquieu, " 'there is no liberty if the power of judging be not separated from the legislative and executive

powers.' " *Ibid.* (quoting 1 Montesquieu, Spirit of Laws 181). Slip op. p. 17, 5 U.S. 180.[4]

28. Utah thus cannot ignore the separation of powers mandated by the United States Constitution and establish a Board of Pardons with <u>executive</u> power to <u>sentence</u> prisoners at its untrammeled and unreviewable discretion, who plead guilty to a judge for an indefinite term to be fixed by <u>the Board of Pardons and Parole not bound thereto</u>, *Labrum v. State*, 870 P.2d 902 (1993). This leads to a classic "Catch-22": Should a defendant plead <u>guilty to an alleged crime</u> having an <u>unenforceable indefinite term not under judicial jurisdiction</u>?

_____

[4] Article I: Sec. 3. [**Utah inseparable from the Union.**] The State of Utah is an inseparable part of the Federal Union and **the Constitution of the United States is the supreme law of the land**. (emphasis added). ARTICLE V; DISTRIBUTION OF POWERS; Section 1. [**Three departments of government.**] The powers of the government of the State of Utah shall be divided into three **distinct** departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise **any** functions appertaining to either of the others, **except in the cases herein expressly directed or permitted.**
ARTICLE VIII; JUDICIAL DEPARTMENT; Section 1. [**Judicial powers, how vested.**] The Judicial power of the State shall be vested in the Senate sitting as a court of impeachment, in a supreme court, in district courts, in justices of the peace, and such other courts inferior to the Supreme Court as may be established by law. (emphasis added)

/s/                                        21

29. Furthermore, in declaring what shall be the <u>supreme law of</u> <u>the land</u>, the Constitution itself is first mentioned, and not the laws of the United States generally, but those alone made pursuant to the Constitution, have that rank.

30. Thus, the phraseology of the Constitution of the United States confirms and strengthens the principle, supposed to be essential to all written Constitutions, that a law repugnant to the Constitution is void, and that courts, as well as other departments, are bound by that instrument, *Marberry v. Madison*, 5 U.S. 137, 180 (1803).

31. This Court's obvious strategy from the beginning was to remove Burton and keep his client, Glen Winward, master carpenter, for the rest of his life working profitably for the State in the prison wood shop.  The Board of Pardons has no intention to release Winward, or it would not have given him a life sentence nine days after Burton's oral argument and again recently anew for life.  The Utah Supreme Court never challenged it and was thus complicit with it.

32. Winward's sentence was recently reviewed by the Board, that fixed it anew at July 17, 2095 for a crime he has always denied

committing, and even had it been, it was obtained at the second trial by sequestered and forced child testimony, now recanted.  Winward's commitment is shameful as well as illegal on its face.  So much for the Board of Pardons.

33. Unfortunately for the State Bar, not only had Burton defeated Deloris Horn's charging Burton with malpractice in the Justice Court, but, in addition, he had also neither bungled Horn's next try bringing her case against David Jensen in the District Court, where, due to *res judicata*, there was no jurisdiction anyway.

34. To the contrary, Jensen had changed employment so that Burton lost his location, and on August 18, 2013 the Court Clerk had transferred the case from South Jordan District where it had case number, 110405428 to the Salt Lake City District with a new case number, 130905429.  Burton had not received notice of this change due to some Post Office confusion in delivering mail to his previous 1619 Post Office box.

35. Once Burton found the *Horn v. Jensen* pleadings, he learned that the case had been closed on September 15, 2014, and so filed a motion on November 10, 2014 in the District Court under its

new file number, 130905429, to Reopen the Case Due to
Inadvertence.

36.  By this time, however, State Bar counsel Barbara
Townsend had directed Horn to fire Burton, and Horn did so, orally
in his presence and over his objection.  Jensen, by then, had his own
counsel who collaborated with the State Bar by opposing Burton's
motion to reopen his case.

37. Burton thus had to report to Judge Laura Scott on March
26, 2015 that he no longer represented Delores Horn and thus was
required dutifully to withdraw from the case.

38. The Bar's discipline against Burton was based upon his not
prosecuting the Horn v. Jensen case.   Since Horn's case was on the
cusp of being reinstated and prosecuted as Burton asked to do,
whatever the result, there could be no ground for discipline.  The Bar
cannot, therefore, profit from ignoring *res judicata* bar on the one
hand and interfering with Burton's reopening of the *Horn v. Jensen*
case on the other hand.

39. Furthermore, once Burton caught up with Mr. Jensen, Mr.
Jensen's notes regarding Mrs. Horn revealed that Mrs. Horn's

accusations against him were just as false as they were against Burton.

40. Barbara Townsend's impeding Horn's case against Jensen and the Justice Court's impeding Horn's case against Burton, left both the Bar and Horn without any case against Burton. His reinstatement is thus required as a matter of law based on the pleadings alone.

41. Violating once again the *res judicata* doctrine making it illegal to retry the two cases lost against Mr. Burton, the State Bar nevertheless pursued its illegal District Court case against him for a third try *in absentia* by not allowing Burton's request to appear either by telephone on schedule or in person one day later at a trial already barred by *res judicata*. Ms. Townsend also mistakenly said Burton had not appeared at the public interest hearing, when he had done so, although somewhat late. Regardless, a review of the Bar's voluminous compiled and tabulated alleged evidence against Burton shows on its face that he had done <u>extensive</u> work on the Horn case, worth far more than the small sum she had paid him.

42. Since *res judicata* defeated Horn's evidence against Burton and Horn waived her case imminently available against Jensen, the

/s/                                    25

District Court case against Burton was barred as a matter of law.  In addition, Mr. Jensen's evidence against Mrs. Horn is that she was a prevaricator showing that Jensen would likely have defeated her case were it reinstated, again leaving both no basis for the Bar's disciplining Burton on the one hand, and Townsend's obstructing Burton's right to justice on the other hand.

43. Even after the Bar's judgment against Burton *in absentia*, he sought under Rule 60 to set the default aside as beyond his ability to appear, which the Court wrongly denied out of hand and without hearing the reason for his nonappearance.

44. Finally, before entering a post-answer default judgment, the trial court should have held a hearing on Burton's evidence, and he must have been given notice of that hearing, which the Utah District Court never did.[5]

---

[5] ."[O] nce a defendant has made an appearance in a cause, he is entitled to the notice of the trial setting as a matter of due process under the Fourteenth Amendment."); KSNG Architects, Inc. v. Beasley, 109 S.W.3d 894, 899 (Tex.App.—Dallas 2003, no pet.)  ("[W] ell-settled law forbids entering a default judgment against a defendant that has received no notice of the hearing on a motion for default judgment."); Vaughan v. Medina, No. 01–09–00885–CV, 2011 WL 1233556, at *2 (Tex.App.—Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem.op.) (After defendant files answer, "judgment cannot be entered on the pleadings, but the claimant must offer evidence and prove his case as in a judgment upon a trial.")

45. Finally, Mrs. Horn had nothing to complain about, having already lost her case against Burton in the Justice Court on the one hand, and after firing Burton at the Bar's instance, she abandoned her prospective reinstated case against Jensen at the District Court level, on the other hand.  Since she was thus not harmed, Burton cannot be in violation of any Utah State Bar rule justifying his suspension, Bar rule 14-604©.

46. The District Court's invalid Order suspending Burton's law license for three years after 50 years of celebrated practice, is void by depriving Burton both of the right to speak in court, the right to earn a living, the defense of *res judicata*, the right of remediation, the constitutional right to reform the law, and the right not to have justice obstructed, *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, (1985).  The suspension is also void as excessive, *Timbs v. Indiana*, 586 U.S. _____ (2019).

47. A void judgment need not be obeyed; Martin Luther King's march at Montgomery, Alabama on March 25, 1965 was in violation of the City's prospective refusal of a parade permit, which refusal was itself a violation of the 1st Amendment.

48. Once again, out of an abundance of caution, Burton, by special appearance so as not to concede jurisdiction, appealed the District Court's void suspension. Continuing its vendetta against him, however, the State Bar falsely claimed that the appeal was not timely when irrefutable evidence showed that it was **emailed** on time, but two out of the three District Court's clerks mysteriously claimed that it was not received until two days later. Even if two out of the three emails took an incredible two days to arrive, one was still timely when filed, whether or not received. Burton also has a paper receipt of the email on deposit with the Utah Supreme Court Clerk, Nicole Gray.

49. The Second District Court's tortured reasoning that the emailed complaint was late despite an available copy of the computer transmission is not credible, and yet the District Court IN ITS OPINION insultingly accused Burton of not being credible. Furthermore, the Supreme Court itself assumed the appeal on June 18, 2018, but never followed it through.

> Please be advised that the notice of appeal in this case has been filed with the Utah Supreme Court. The case number is 20180472 and should be indicated on any future filings or correspondence. Included with this notice is an order transferring the case to the Utah Court of Appeals within twenty days. The order remains in effect

unless, within 7 business days of the date the order letters are received advising the Supreme Court why they should retain the case.

50. On June 25, 2018, the District Court Amended its foregoing letter with detailed instructions to be followed to perfect the appeal. The Supreme Court on September 27, 2019, however, said that it lacked jurisdiction over the appeal, and so dismissed it. It apparently decided that Burton's appeal by internet transmission since he had been excluded from Green Filing for not being licensed, was not timely when the evidence clearly shows that it was.

51. Even so, Burton's appeal had only been out of an abundance of caution since the Supreme Court had already superseded any District court filing of an appeal as noted above.

52. Finally, a District Court cannot suspend an attorney's license IRRESPECTIVE OF COURT RULES. Only the Utah Supreme Court has that prerogative, *Keller v. State Bar of Cal.*, 496 U.S. 1 (1990), *Barnard v. Utah State Bar*, 804 P. 2d. 526 (1991). Accordingly, the District Court's purported suspension order is on all grounds void, making the contested appeal unnecessary.

53. The Supreme Court cannot dodge this rule either by purporting to allow the legislature or the State Bar to substitute for its constitutional duty, notwithstanding any purported delegation.

Doing so has resulted in this harmful alleged deprivation of Burton's right to practice his profession and to free Glen Winward, Ricky Martin, and Leo Rising from the Board of Pardon's criminality and the Supreme Court's inaction.        April 17, 2023

Thomas M. Burton

--------------------------

## CERTIFICATE OF SERVOCE

_____S_____

**1.**    opc@opcutah.org

**2.**    supremecourt@utahcourts.gov

**3.**    http://attorneygeneral.utah.gov